**UNITED STATES of America**
**v.**
**James T. SKEENS, Appellant.**
**No. 72-1582.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 19, 1973.
Decided Jan. 28, 1974.
Rehearing Denied March 11, 1974.

Fahy, Senior Circuit Judge, filed opinion *concurring in part and dissenting in part.*

---

Dorothy Sellers, Washington, D. C. (appointed by this Court) for appellant.

Lee Cross, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Charles R. Work, Asst. U. S. Attys., were on the brief, for appellee. Roger M. Adelman, Asst. U. S. Atty., also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, WISDOM,* Circuit Judge for the Fifth Circuit, and WILKEY, Circuit Judge.

WILKEY, Circuit Judge:

Appellant in this case was tried and convicted of robbery and assault with a dangerous weapon. He alleges five distinct grounds for reversal on appeal. We find that they are all without merit and that the convictions should be upheld.

1. *The validity of the identification.*

█ Appellant alleges that he was deprived of due process of law because the identification procedures used were unduly suggestive. The complaining witness confronted appellant in a situation which we shall assume for the sake of argument to have been suggestive. Even so, the in-court identification was not fatally flawed because the witness had originally identified appellant from photographs in a situation that was not unduly suggestive.

█ The identification in this case occurred prior to the decision in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and, therefore, is admissible if the factors surrounding it indicate that it is reliable. *See* Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In this situation there are two factors that tend to show reliability: (1) The complaining witness got a very good look at the robbers at the time of the robbery. The crime occurred in broad daylight, and the detail of his description of the robbers indicates that his opportunity to

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

see them was good. (2) There was a positive identification of a recent photograph of appellant by the victim prior to the arguably unlawful encounter at the Commissioner's when defendant Skeens was accompanied by one Reichert, an alleged co-participant in the crime. This was the witness Swindler's first look and first identification of Reichert, but not of Skeens. In fact Reichert's motion to suppress this identification was granted, precisely because Reichert had been first identified in a one-on-one confrontation ("a textbook *Stovall*," in the words of the trial judge) accompanied by "a second man (Skeens) who has already been positively identified as a participant in the crime." It was the validity and positiveness of the witness' previous identification of Skeens which was a strong ground for suppressing the identification of Reichert, first displayed in the company of Skeens.

Now it is the validity of the identification of Skeens which is under attack. That identification came about in this way. The police placed a large number of slide photographs in a carousel projector, timed to display each photo a few seconds, then automatically move on to the next. Police officers were in and out of the room, not necessarily being with the witness Swindler at all times as he sat viewing the slides being flashed on the screen. Swindler uttered a remark indicating a tentative recognition when the slide of Skeens was flashed on. He had not given any hint of recognition of any other photo. The officers questioned Swindler; he was not certain at this time. One officer remembered there was a more recent photo of Skeens; this was placed in the projector in a random order with other undisplayed slides and flashed on at automatic intervals. This time the more recent photo elicited a much more positive identification from Swindler. Exactly what he said is a matter of dispute in the testimony, but it was strong enough to persuade the officers to seek an arrest warrant for Skeens, whom previously they had had no cause to suspect. And it

was strong enough to persuade the District Judge ruling on the motions to suppress to say "Indeed, had the affidavit recited only the facts as defense counsel alleges them to have been at the time of the picture identification, there still would have been probable cause to issue the arrest warrant."

 It is hard to imagine a more objective police identification procedure. Yet, appellant Skeens alleges that this photographic identification was flawed because a police officer made mention of appellant's recent release from prison prior to the positive identification. There is a dispute in the testimony regarding whether this reference was made after a tentative identification of the older photo of appellant or after the positive identification of the later one. Even if the reference occurred before the positive identification, appellant had no way of knowing that the photo he positively identified was that of appellant. The record shows that the photo the victim did identify was placed in the slide projector in a random order and that it was not called to the witness' attention when it flashed on the screen. We believe that the factors given here are sufficient to show that the in-court identification was reliable.

### 2. The grand jury proceeding.

 Appellant argues that he was unduly prejudiced by prosecution statements at the grand jury proceedings. The record reveals that most of the questioning was done in an effort to impeach certain statements made by appellant's wife. In this context they do not appear to be as prejudicial as appellant argues. Under no circumstances could they be viewed as being as prejudicial as those attacked in Coppedge v. United States, 114 U.S.App.D.C. 79, 82–83, 311 F.2d 128, 131–132 (1962). In that case the court upheld an indictment even though it was based in part upon perjured testimony. Appellant has not shown that the grand jury was improperly constituted or that there was not sufficient evidence on the whole record

to support the indictment. This argument must, therefore, fail.

### 3. *Prejudice from delay.*

Appellant contends that he was unduly prejudiced by the 21-month delay between his arrest and trial. Under the decision in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we are admonished to consider four factors in evaluating such a contention: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the resulting prejudice to the defendant. In this case appellant did not assert his right until much of the delay complained of had occurred. The record also reflects that much of the time it took to decide various defense the delay complained of was caused by motions. We also conclude that appellant was not substantially prejudiced by the delay in this case. The nine months' incarceration following his arrest was due to appellant's parole being revoked on another charge. Any prejudice due to the death of appellant's wife was ameliorated, at least somewhat, by the Government's offer to let appellant use the transcript of the wife's testimony at the grand jury. In any case, most of the delay up to the time of the wife's death was attributable to appellant; any prejudice on this count is a consequence of appellant's own action.

### 4. *Statements by prosecution during trial.*

Appellant complains that three statements by the prosecution or witnesses so prejudiced appellant that we must overturn his conviction: (1) During the opening argument, the prosecution allegedly stated that it would prove more than it actually did. Admittedly, not everything alleged was proved in the Government's case in chief. It appears, however, that a police officer called as a hostile witness by the defense did testify to everything which had not already been shown; thus it is impossible to see how appellant could have been preju-diced by these allegations. (2) Appellant contends that mention by a police officer, who testified for the defense as a hostile witness, of an alleged attempt by the appellant to have the complaining witness murdered is grounds for reversal. Appellant's counsel had not admonished the witness not to mention this subject. More significantly, appellant's trial counsel rejected an offer of a mistrial. Under these circumstances, this mention is not reversible error. (3) The final comment was made by the same police officer who had been called as an adverse witness by the defense. The officer mentioned a fact that the trial judge had specifically ordered the attorneys not to mention during the trial. This revelation was inadvertent. In addition, the witness had never been instructed not to mention the matter by the defense counsel who called him.

### 5. *Admissibility of polygraph examination.*

Appellant argues that the trial court erred in failing to conduct an evidentiary hearing on the admissibility of a polygraph test that allegedly supported his innocence. The leading case in this Circuit is Frye v. United States, 54 App.D.C. 46, 293 F. 1013 (1923), which holds such tests inadmissible. This case has been followed uniformly in this and other Circuits and there has never been any successful challenge to it in any federal court.

The conviction is

Affirmed.

FAHY, Senior Circuit Judge (concurring in part, dissenting in part):

This case presents difficult problems for me. I agree with the majority opinion that the indictment need not be dismissed due to the conduct of the prosecution in examining appellant's wife before the Grand Jury which returned the indictment. I must add, however, that I think the examination was inexcusably abusive and oppressive.

I am also troubled by the twenty-one month delay between arrest and trial.

In the interim appellant's wife died, resulting in prejudice to his defense. He was deprived of her support to his alibi defense. The time of the offense in relation to his whereabouts as testified by his wife before the Grand Jury and by other witnesses made the alibi defense a credible one. As the opinion of the court states, however, the resulting prejudice was ameliorated by the offer of the Government to make available at trial her relevant Grand Jury testimony. The likelihood of prejudice would not thereby have been entirely eliminated, for if living she might effectively have persuaded the jury by her live testimony. The reason I find the delay not ground for directing the District Court "to set aside the judgment, vacate the sentence, and dismiss the indictment," Strunk v. United States, 412 U.S. 434, 440, 93 S.Ct. 2260, 2264, 37 L.Ed.2d 56 (1973), is that much of it was due to the necessity of disposing of appellant's pretrial motions.

My uneasiness about the trial is increased by prejudicial trial statements of a witness, to whom I shall refer as Officer B. One such statement which flawed the trial, but not fatally, grew out of appellant's statement to the arresting officers at his home that he was "alone with the children." Hearing a cough in another part of the house the officers, one of whom was Officer B, discovered and arrested Reichert as one of the two robbers. Before trial the court ruled that this statement of appellant would not be admitted because he had not waived his right to counsel. The prosecutor promised the court he would advise Officer B of this ruling to ensure that the statement would not be inadvertently revealed. Officer B nevertheless did disclose the statement during the course of his testimony at trial.

Perhaps more seriously prejudicial were the reasons given by this officer at trial for his arrest of a third suspect. He gratuitously seemed to imply that appellant had hired the suspect to kill Mr. Swindler, the victim of the robbery and the only identifying eyewitness. Defense counsel, however, refused the Government's offer of a mistrial, apparently feeling that the prosecution itself was desirous of such a result.

There is also the puzzling elimination of the Federal Bureau of Investigation from full participation in the investigation, attributable to the statement by Officer B to the F.B.I. Agent, Harker, that the robbery did not involve the theft of more than $5000.00, which led to the agent's withdrawal. This statement by Officer B was made sometime after Mr. Swindler had tentatively identified the first photograph of appellant on May 15, 1967. An affidavit for a warrant to arrest appellant, subsequently drawn up by the investigating police, states that "$15,211.72 in assorted cash and checks . . ." was stolen. Before his withdrawal the agent witnessed enough of the photographic identification by Mr. Swindler to enable him at trial to give critical testimony about it, inconsistent with that of Officer B, as will appear.

In connection with all of the foregoing I also note with uneasiness the shadow cast upon the trial by the circumstance that appellant had been a government informer, in which capacity he had aided in the conviction of four police officers of a bribery conspiracy. See, Wallace v. United States, 134 U.S.App.D.C. 50, 412 F.2d 1097 (1969). Officer B had also been investigated by a Grand Jury before which appellant and his wife had testified, and while he had not been indicted by this Grand Jury and was convicted ten days before appellant's arrest.[1]

Notwithstanding my skepticism about the fairness of the trial, some of the reasons for which I have outlined, I would affirm without more, in view of the evidence as a whole, if satisfied as

---

1. The brother of one of the arresting officers had also been convicted as a result of information supplied by appellant.

to the procedures which led to the in-trial identification of appellant as one of the two robbers. But I am not satisfied in that respect. Since the occurrences were before the decision in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the United States correctly points out that the due process standard of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), governs with respect to the identification. It is therefore a question whether the pretrial procedures were "unnecessarily suggestive and conducive to irreparable mistaken identification." 388 U.S. at 302, 87 S.Ct. at 1972. I think this requires at least further consideration by the District Court for reasons now to be explained.

On the day of the robbery, May 15, 1967, Mr. Swindler was taken to the Robbery Squad to view photographic slides of possible suspects. The following is his testimony at the Preliminary Hearing on May 23, 1967, regarding his recognition of a picture of appellant in the screen-showing of slides:

A [Mr. Swindler]: I said, "it looks like one of the men, the shortest man that held me up."

\* \* \* \* \* \*

Q [Defense Counsel]: Nobody said anything when you said, "That looks like the man."?

A He [Officer B] asked me if I am sure and I said, "No, I'm not sure, it looks like him."

Q Then what happened?

A He said, "I am going to pick him up." And I said, "I'm not sure, it looks like him." One officer said to the other officer, "We have a later picture of him in there, can you find it?" He said, "We should have one around here somewhere."

When the second picture of the same man came on the screen, his testimony is as follows:

Q Did you recognize the second picture as being the picture of the first man you had seen in the slide?

A Correct.

Q What was your reaction when you saw the second picture?

A I told them it still looked like the same man I seen on the other picture.

Q You weren't any more positive about it than the first picture, is that correct?

A I said he looked much better. One picture was clearer than the other picture.

Q What was said to you by any of the officer present after that?

A He says, "He ain't too long been out, he's been released." He didn't say when but he said, "He's out on the street."

Q Then you—

A I said, "Well, that looks like the man that held me up, the shortest one."

\* \* \* \* \* \*

Q And after you were told that it hadn't been too long since he had been out, did he [Officer B] ask you if you were positive?

A Yes.

Q And that is when you stated you were positive, is that correct?

A I says, "If I see them both together I could identify them much plainer but he do look like the shortest man that held me up."

\* \* \* \* \* \*

Q That's about the best you can commit youself?

A I don't know if it's the best but he had the same hair on his head and everything.

At the hearing on appellant's pretrial motion to suppress identification testi-

mony, November 3, 1967, conducted by a judge other than the trial judge, F.B.I. Agent Harker personally testified about the same proceedings as follows:

THE COURT: After your arrival were you there when Skeen's picture was shown to the witness?

THE WITNESS: Yes sir.

\* \* \* \* \* \*

He said words to the effect, I believe that is the man. I think that is the man. Or, I don't know if those were his words but they were words which he might characterize as tentative or possibly identification or something to that effect.

Q [Defense counsel]: Did he ever state that he was positive that the man in the picture, that the picture was of Mr. Skeens, who held him up or one of the men who held him up that day?

A Not at the time I was present.

Q Was he asked if he was positive or not positive?

A Yes.

Q And did he respond in the negative?

A I don't know whether he just said no, but my recollection is that he continued to repeat the somewhat equivocal phrases. I think he used those to that effect without saying I am positive that is him.[2]

According to Officer B's testimony, however, Mr. Swindler had identified both photographs positively, but the police "backed him down" on his identification of the first photograph.

The hearing on the motion to suppress was continued in order to have the testimony of Mr. Swindler at the Preliminary Hearing transcribed. After considering that testimony at the resumed hearing on December 1, 1967, the judge several times expressed doubt concerning both the arrest and identification of appellant, concluding with these comments:

THE COURT: . . . [T]he man [Mr. Swindler] says he [appellant] looks like the man [the shorter robber], I [Mr. Swindler] am not certain of the man [appellant]. So far as I [the court] am concerned that is not enough basis for arresting a man.

If I am held up and I look at some pictures and I say, this looks like the man but I am not certain, I do not think you have any right to go out and arrest the man for that reason.

THE PROSECUTOR: I think so.

THE COURT: And neither did the officers think so and that is why the affidavit [accompanying the arrest warrant] looks like it does.

I will take it under advisement.

My conclusion from the foregoing is that the photographic identifications

---

2. On cross-examination of the agent by the prosecutor he said that when appellant observed the picture he

seemed to indicate or he did indicate I believe or he felt that this was the individual. And then he was asked why by one of the others and I am not sure whom, are you sure that is the man? Are you positive that is the man? And he answered No up to the point—he seemed to think it was the man and whenever we discussed the fact is this the man, or do you think it was the man? He thought it was the man up to the point of being absolutely positive or absolutely certain. Up to that point he seemed to be enthusiastically

thinking and feeling it was the man up to that point but he could not be absolutely positive. . . .

\* \* \* \* \*

THE COURT: And you did not feel that part of the procedure which had to do with Skeens' picture was something of a re-run? In other words, you had the feeling he had had some sort of a positive reaction to this picture before you came in?

THE WITNESS: Either I had that feeling from what he said before or maybe they had gotten me aside and told me he had partially identified Mr. Skeens. . . .

were only tentative when made, as the judge and the F.B.I. Agent said. Mr. Swindler was not positive. This is important because the judge who presided over these hearings on the motion to suppress did not rule on the motion until March 25, 1968, at which time, without stating his reasons, he denied the motion.

Later, in a Memorandum accompanying his order of July 2, 1968, granting Reichert's motion to suppress, the reasons the judge had in mind for denying appellant's like motion might appear from the following: at a hearing on Reichert's motion on March 29, 1968, Mr. Swindler testified that the morning after the robbery he was brought to a room at the United States Commissioner's offices, not the courtroom "where they were trying" cases, but a waiting room. Appellant's preliminary hearing had been scheduled for that day but was postponed at counsel's request. Nevertheless, after he had been waiting there about an hour Officer B took him to the doorway to the Commissioner's office and while standing there Mr. Swindler saw some people come through the doorway from another room, apparently the cell block. Among them were appellant and Reichert, together. Thereupon Mr. Swindler, who the day before at the photographic proceedings had expressed the desire to see the suspects together, told Officer B that they were the two men who robbed him.[3] At the conclusion of Mr. Swindler's testimony as to how this confrontation occurred, the judge commented: ". . . if I have ever seen a Stovall . . . . . This is a text book Stovall," an identification procedure which violated due process of law. In his order of July 2, 1968, however, in granting Reichert's motion to suppress, the judge stated:

> Earlier, the defendant Skeens filed an identical motion to suppress testimony relative to his identification, at the hearing thereof it was urged that any identification made in court would be so tainted by suggestive factors as to constitute a denial of due process. Since Skeens had been originally identified by means of a photographic identification procedure which was not suggestive in any fashion the court was not persuaded, and so denied his motion.

> But this is not the case insofar as Reichert is concerned. Here, we have the presentation of one suspect in custody of the authorities, and in company with a second man who has already been positively identified as a participant in the crime.

In denying appellant's motion he thus apparently had concluded that Mr. Swindler previously had positively identified appellant by the photographs—which seems clearly not to have been the case. Moreover, at trial the Government itself stated to the trial judge regarding the confrontation on May 16,

> [The Prosecutor]: In other words, the only reason we are here today on

---

3. At the hearing of December 1, 1967, appellant's counsel advised the judge that he had informed Officer B that he had requested a postponement of the Preliminary Hearing and that the Commissioner had agreed. Subsequently, the case was formally postponed for one week. Apparently after Officer B had spoken with defense counsel, he brought Mr. Swindler to the entrance of the Commissioner's office, opposite the cell block, although Mr. Swindler's presence was no longer required.

Further doubts are cast upon the non-suggestive character of this confrontation, and upon the trustworthiness of Officer B's testimony, by the following circumstances: he said Mr. Swindler was seated in the outer office of the Commissioner's hearing room because the hearing room was crowded and packed, and after some little while he took Mr. Swindler through the Commissioner's private office. However, Mr. Sherbacow, who was the attorney for Skeens at the time, and at the time of the trial was an Assistant U. S. Attorney in the District of Connecticut, testified there weren't very many people at all in the hearing room.

the defendant Skeens is that [the judge] ruled that his identification was based upon an independent source and he held that the confrontation at the Commissioner's was a due process violation.

\* \* \* \* \* \*

*A fortiori it would be a due process violation as to the defendant Skeens [as well as Reichert] also there at the same time.*[4] (Emphasis added.)

Appellant twice renewed before the trial judge his motion to suppress the identification testimony on the ground that the judge who had ruled on the pretrial motion had erred in concluding that appellant had been positively identified by photograph. Neither the trial judge nor counsel, though aware that appellant's motion to suppress had been denied, appears to have known when this had occurred, or the basis for it. The trial judge stated, "I have to decide that there was ample reason for [his] decision that Mr. Skeens had been properly identified outside of the confrontation."

It is possible that the motion judge's Memorandum of July 2, 1968, in the Reichert case, which referred to a positive identification of appellant, placed some reliance upon the affidavit accompanying the arrest warrant. This affidavit, as we shall see, misstated the nature of Mr. Swindler's identification. Moreover, the motion judge's reference to the positive character of the photographic identification conflicts with his own opinion expressed seven months earlier at the hearing on December 1, 1967, when he characterized the identification as uncertain. Between then and the order of March 25, 1967, denying appel-

lant's motion, no new evidence was adduced. In then reaching a different conclusion, even if the judge could be thought to have relied on Officer B's testimony of the previous November 3, to which he had not given full credence, it would not in my opinion obviate a different course from that I conclude should now be followed, to be set forth at the conclusion of this opinion.

Reverting now to the affidavit accompanying the warrant for the arrest, referred to above, it was later, on October 31, 1968, appraised also as follows by a different judge who had the responsibility of considering the validity of the arrest warrant:

> Mr. Swindler made an identification of Defendant Skeens, from pictures, as one of the two men who robbed him. It was not as positive or unequivocal an identification as the affidavit describes, but it was an identification on which a finding of probable cause could reasonably be predicated. When shown the second picture, Mr. Swindler may not have jumped up from his chair and stated decisively, "That's him!" However, this does not vitiate the fact that an identification was made, though one more tentative than that described in the affidavit. In sum, the affidavit was an exaggeration of the facts, but it was not "consciously false"; it does not "unequivocally demonstrate the absence of probable cause to arrest Skeens." Indeed, had the affidavit recited only the facts as defense counsel alleges them to have been at the time of the picture identification, there still would have been probable cause to issue the arrest warrant. (Footnote omitted.)

---

4. For this reason the Government opposed the introduction into evidence of testimony concerning this confrontation. Defense counsel, however, sought its introduction when the trial court denied his motion to suppress the in-court identification by Mr. Swindler. Evidence of the confrontation was allowed upon waiver by defense counsel

of objections to its use. This waiver was not intended by defense counsel to waive his exception to the previous denial of appellant's motion to suppress the in-court identification. Indeed during the course of trial, counsel renewed his motion, which was not opposed by the Government on the ground of waiver.

Obviously "probable cause" is not "positiveness." The judge based his probable cause conclusion on the testimony of Mr. Swindler at the Preliminary Hearing of May 23, 1967, which had been considered on December 1, 1967, by the pretrial motion judge, who had then also concluded that Mr. Swindler's testimony was not a positive identification of appellant.

From the overall factual situation above analyzed I cannot conclude with any degree of confidence that the mistake as to the character of the photographic identifications, considered with the suggestive show-up at the Commissioner's office, does not require the admissibility of appellant's identification by Mr. Swindler at trial to have been based on a source independent of the photographic and "Stovall" procedures, which was not done. The difficulty is not remedied by the course of the trial itself, for it is clear the trial judge relied heavily on the questionable pretrial denial of appellant's motion.

It seems to me the matter should at least be clarified. This can be done by a remand for a redetermination of the admissibility of the in-court identification made by Mr. Swindler, taking into consideration the analysis of the scattered evidence bearing thereon which I have tried to pull together in this opinion. Should the court find on the basis of the present record that the in-court identification by Mr. Swindler (1) rested upon a source independent of the photographic and "Stovall" identifications, or (2) that neither the apparently tentative character of the photographic identifications, nor the "Stovall" identification of May 16, 1967, would alter the conclusion of the District Court that the in-court identification was admissible, as not tainted by unnecessarily suggestive pretrial identification procedures, then the judgment of conviction would not be disturbed.

Should the court, on the other hand, be unable to make a finding of either (1) or (2) above, a new trial should be ordered, in which event the Swindler identification testimony would be admissible at trial only upon a clear and convincing showing that it would rest upon a source independent of either the previous photographic or "Stovall" procedures, that is, upon Mr. Swindler's recollection of the events and the participants therein at the time he was robbed. United States v. Sanders, 156 U.S.App. D.C. 210, 479 F.2d 1193 (1973).

This court should in my opinion retain jurisdiction pending the result of such a remand.