UNITED STATES of America,
Plaintiff-Appellee,

v.

Milton PENICK, Defendant-
Appellant.

No. 73–1608.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1974.

Decided May 8, 1974.

Ronald R. Marich, Federal Defender Program, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Royal B. Martin, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and STEVENS and SPRECHER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Milton Penick was charged in a five count indictment on August 24, 1972. Each count alleged that he violated Title 21, U.S.C. § 841(a)(1) [1] by distributing and possessing a Schedule I controlled substance as charged in Counts I, II, III and IV, and a Schedule III controlled substance as charged in Count V.

Count I involved approximately 3.25 grams of heroin; Count II, 6.9 grams of marijuana; Count III, 4.6 grams of heroin; and Count IV, 1.5 grams of heroin. Count V involved approximately 1.6 grams of diethylpropion. Count V was subsequently dismissed on February 26, 1973, upon discovery that diethylpropion was not a Schedule III controlled substance. Count V will not be considered further.

Defendant was well represented at all times in the trial court and on this appeal by court appointed attorneys from the Federal Defender Program in the Northern District of Illinois.

After a proper waiver of trial by jury, defendant was tried to the court. A verdict of guilty on Counts I, II, III and IV was returned April 9, 1973. Subsequently, on June 13, 1973, the trial court reversed its finding as to Count I and found defendant not guilty on this count. Judgment was entered on the verdict.

On June 19, 1973, defendant was sentenced to the custody of the Attorney General for a period of 3 years on Count II, and 6 years on each of Counts III and IV, the sentences to run concurrently with each other, and 3 years mandatory parole to run successively. Defendant appeals from the judgment of conviction and sentence. We affirm.

Defendant basically raises three issues for review on this appeal, *viz*.: (1) whether the trial court (Judge McMillen) considered matters not of record in the trial; (2) whether the trial court correctly limited the cross-examination of the government informant, Ernest Lee, and Stephen Bushendorf, a special agent of the Bureau of Narcotics and Dangerous Drugs (BNDD); and (3) whether the trial court correctly denied defendant's request for Criminal Justice Act funds for a polygraph examination of defendant with respect to Counts II, III and IV.

Briefly, the Government introduced the testimony of BNDD Special Agents Thomas N. Lee, Stephen Bushendorf and Kenneth A. Adams; BNDD chemists Mark D. Cunningham and Terry Gaston; and government informant Ernest Lee, together with certain group exhibits, to make its case in chief. Defendant called a Chicago police officer, a federal probation officer and an investigator for the Better Government Association (who had taken photographs); also Peter Demos and Jan Marie Pasternack,

---

1. § 841. Prohibited acts A—Unlawful acts
   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; * * *.

both narcotics users and close associates of Ernest Lee; Anthony James Valentino, a security employee of a detective agency; Lisha Penick, wife of defendant, and defendant himself.

We have made a careful examination of the transcript of the evidence in this case, as well as the record of the trial below. The Government's principal witnesses were its paid informant, Ernest Lee, and BNDD Agent Bushendorf, supported by other surveillant agents. The credibility of informant Lee was a key issue throughout. This was a trial to the court, without the intervention of a jury. Defendant and his wife each categorically denied that defendant ever sold or possessed hereoin or marijuana as testified to by Lee. It is in this posture of the case that we review the issues raised on appeal.

## I.

■ Defendant contends he was denied his Fifth Amendment right to due process of law in two respects. He first charges that the trial judge failed to inform him prior to his waiver of jury trial that such judge had a predisposition toward believing the Government's informant. As a result of this failure, defendant says he was precluded from executing an effective jury waiver. Finally, defendant claims that with such information he certainly would not have waived trial by jury.

It appears that Judge McMillen had presided in a prior jury trial, United States v. Coduto, 71–CR–1025, in which defendant Coduto was involved in narcotics charges. There, as here, the Government's key witness was the same paid informant, Ernest Lee. After Lee's testimony a number of the defendants changed their not guilty pleas to pleas of guilty. The trial judge, of course, accepted these pleas, apparently including Coduto's.

In considering the guilt or innocence of defendant Penick in the instant case, defendant cites the following statement by the court:

He [Lee] is an oft-convicted felon of bad reputation who uses narcotic drugs and is supported financially by the government. Only for lack of a better alternative should such an informant be used, yet in previous litigation, his testimony has sustained attacks similar to those leveled by the defendant's attorney, and his victims have pleaded guilty.

However, what defendant fails to cite is the language by the court immediately following the above:

He [Lee] testified clearly and convincingly in the case at bar, his composure shaken on cross-examination only to the extent that he became petulant and uncooperative with defendant's attorney. At this juncture, because the surveillance undertaken by the government's agents controlled his activities and because defendant has offered only a general denial, we accept the testimony of the informant as true and find the defendant guilty beyond a reasonable doubt under Count I.

Further, the record shows that at the beginning of the trial, defendant's trial counsel, Mr. Beeler, unexpectedly announced to the court that during the noon hour defendant had executed a waiver of trial by jury. The court then meticulously examined defendant in open court about his understanding of the waiver, and also interrogated his counsel and that of the Government. It was made known that Ernest Lee would be a government witness, as a confidential informant for the BNDD. The trial judge at one point said he did not "want to be in a position of deciding something on which I had any information given to me out of the presence of the defendant." The judge added that he could not think of anything, other than the motions that had been filed. Counsel did not disagree.

The record further shows that in denying defendant's post-trial motion relating to the same comment, the judge said: "The court did not consider any

evidence brought out at the previous trial where the informant testified concerning defendants and transactions unrelated to the defendant's case."

In sum, the defendant was made fully aware of his right to trial by jury at the time he executed his waiver; his own counsel approved the waiver and tendered it to the court; the Government consented to the waiver; the defendant was personally interrogated in open court by the trial judge concerning his desire to waive a trial by jury; and the waiver was executed knowingly, intelligently and with full knowledge of the consequences. Adams v. United States ex rel. McCann, 317 U.S. 269, 272, 275–278, 63 S.Ct. 236, 87 L.Ed. 268 (1942). See generally, Estrada v. United States, 7 Cir., 457 F.2d 255, 256–257, cert. denied, 409 U.S. 858, 93 S.Ct. 143, 34 L. Ed.2d 104 (1972); Rule 23(a), Fed.R. Crim.P., 18 U.S.C.

Defendant bases a further denial of due process on the theory that the trial judge, in appraising the credibility of informant Lee and in determining defendant's guilt or innocence, improperly relied upon matters outside the record. We think the record belies this assertion.

■■ In addition to the matters set forth in considering the jury waiver issue, the Government aptly points out that in a bench trial the court is deemed to have considered only admissible and relevant material, at least absent a showing of substantive prejudice. United States v. Fox, 7 Cir., 437 F.2d 733, 734, cert. denied, 402 U.S. 1011, 91 S.Ct. 2198, 29 L.Ed.2d 434 (1971); United States v. Krol, 7 Cir., 374 F.2d 776, 779, cert. denied, 389 U.S. 835, 88 S.Ct. 46, 19 L.Ed.2d 97 (1967); United States v. Oliver, 7 Cir., 363 F.2d 15, 19, cert. denied, 385 U.S. 904, 87 S.Ct. 216, 17 L. Ed.2d 135 (1966). This presumption and the positive assertion by the trial judge, above quoted, that he did not consider any evidence brought out in a previous trial where informant Lee testified, dispel any doubt that Judge Mc-

Millen based his findings on credibility or defendant's guilt or innocence on such extraneous matter. Clearly, there is no showing of prejudice. *Cf.* United States v. McCarthy, 6 Cir., 470 F.2d 222, 224 (1972).

II.

Defendant complains that his Sixth Amendment right to confrontation of witnesses was denied him because the trial court refused him the right of cross-examination of informant Lee and BNDD Agent Bushendorf, each in one particular.

■ After Agent Bushendorf, in cross-examination, testified that he lived in the Chicago area, the trial court sustained a government objection to the succeeding question: "At what address do you live?" Defendant insisted this information was necessary "to determine a background of this witness." Counsel was granted leave to examine the witness fully concerning his background, and did so. The witness had been a federal agent for seven years and this was fully explored. The witness testified he had lived at his present address in the Chicago area for approximately three years. Defense counsel was able to place the witness in his proper setting. The Government was on sound ground in expressing a reasonable fear for the physical safety of the witness and that of his family. This exception to the general rule permitting a defendant to cross-examine a government witness concerning his address is well settled. United States v. Daddano, 7 Cir., 432 F. 2d 1119, 1128 (1970), cert. denied, 402 U.S. 905, 91 S.Ct. 1366, 28 L.Ed.2d 645 (1971). See also United States v. Crovedi, 7 Cir., 467 F.2d 1032, 1034–1035 (1972), cert. denied, 410 U.S. 982, 990, 93 S.Ct. 1510, 36 L.Ed.2d 178, 189 (1973); United States v. Alston, 5 Cir., 460 F.2d 48, 50–54 (citing at p. 52 numerous holdings in accord by the Seventh Circuit), cert. denied, 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972). We hold, therefore, that the trial court did not abuse its discretion in thus lim-

iting the cross-examination of Agent Bushendorf in this one particular. Further, in any event, in view of the wide latitude accorded generally in cross-examination of this witness, we find no resulting prejudice to defendant.

■ Defendant complains of a similar limitation in the cross-examination of the informant, Ernest Lee, when the trial judge sustained the Government's objection to the question: "Where do you live now, Mr. Lee?" However, in this instance the court merely requested defendant to lay a proper foundation, and then stated: "If [Lee] has only lived at his present location for a brief time, which apparently he has, I can't see how it would be relevant." Defendant abandoned this line of questioning and never accepted the suggestion of the court. Without further elaboration, the record indicates in many respects that defendant knew of Lee's address during the period of time he purchased heroin from defendant. The record is replete with evidence touching almost every phase of Lee's background and we find that the witness was placed in his proper setting and environment.

We readily agree with the statements and holding of our court in the recent case of United States v. Ott, 7 Cir., 489 F.2d 872 (1973), and fully subscribe thereto. However, that case is readily distinguishable from the case at bar on its facts. Here, Lee was known to defendant, and testified fully concerning his present employment and his employment history extending back to 1965. His counsel was invited by the court to lay a proper foundation for asking the witness his current address. He failed to do so. That defendant was aware of Lee's personality and background is evidenced by his motion to have Lee examined by a psychiatrist before Lee testified.

We find no abuse of discretion or prejudicial error in the court's restriction of the cross-examination of informant Lee in the single particular set out.

### III.

■ Finally, defendant asserts that his constitutional right to due process was violated when the trial court refused to authorize funds for an expert polygraph examination of the defendant and for obtaining expert testimony to establish the reliability of such evidence.

The trial court did authorize funds for a polygraph examination of defendant with respect to Count I of the indictment for the purpose of allowing defendant's attorney to engage in an "experiment." The court further authorized funds for the testimony of John E. Reid, the polygraph operator, who testified in open court. On the basis of Mr. Reid's testimony, the trial court found defendant not guilty on Count I. The trial court had previously stated that Count I involved "a more loosely controlled transaction with the informant on January 11, 1972." He further stated that "if the defendant can raise a reasonable doubt by subjecting himself to a polygraph test on this transaction, we will reconsider our findings of guilt on Count I." The results speak for themselves. Otherwise, the court denied any further polygraph tests.

Our court apparently first considered the exclusion of the results of polygraph tests in United States v. Chastain, 7 Cir., 435 F.2d 686, 687 (1970). In a per curiam opinion, we first held that defendant had not laid a proper foundation for the proffered testimony and finally that "[i]n any event, it is clearly within the discretion of the trial judge to exclude such evidence," citing, e. g., United States v. Tremont, 6 Cir., 351 F. 2d 144, 146 (1965), cert. denied, 383 U. S. 944, 86 S.Ct. 1198, 16 L.Ed.2d 207 (1966).

Indeed, *Tremont*, together with a number of other cases hereinafter referred to, is authority for the proposition that federal courts have consistently denied admission in evidence of the results of a lie detector test. The Sixth Circuit there announced that it was not disposed to re-examine the traditional

rule and "upset the longstanding judicial distrust of such evidence." *Id.*

In United States v. Frogge, 5 Cir., 476 F.2d 969, 970, cert. denied, 414 U.S. 849, 94 S.Ct. 138, 38 L.Ed.2d 97 (1973), the court said: "We are similarly unconvinced by the argument that the trial court erred when it refused to authorize the polygraph examinations requested by the appellants." After noting·a trend in California towards loosening the restrictions on polygraph evidence, the court continued: "the rule is well established in federal criminal cases that the results of lie detector tests are inadmissible. [Citing cases.]" In accord, United States v. Salazar-Gaeta, 9 Cir., 447 F.2d 468, 469 (1971); McCroskey v. United States, 8 Cir., 339 F.2d 895, 897 (1965); Marks v. United States, 10 Cir., 260 F.2d 377, 382 (1958), cert. denied, 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 (1959); Tyler v. United States, 90 U.S. App.D.C. 2, 193 F.2d 24, 31 (1951), cert. denied, 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326 (1952).

It is apparent from the record that Judge McMillen was disposed to grant the polygraph examination of defendant with respect to Count I, on an experimental basis, only because the circumstances surrounding the first sale had not been subject to the scrutiny and control of the federal narcotics agents, as the Government aptly observes. The contrary was the case concerning the sales in Counts II, III and IV. Further, the transfer of the heroin in Count IV took place in the presence of Agent Bushendorf. Hence, as observed in *Chastain, supra,* if the exclusion of such evidence lies "clearly within the discretion of the trial judge," it necessarily follows that the trial court did not abuse its discretion in refusing to authorize the requested funds.

Defendant has challenged only the refusal to authorize the requested funds under the Criminal Justice Act of 1964, as amended, 18 U.S.C. § 3006A. He has not claimed that the results of a polygraph examination should have been admitted into evidence. If such evidence is deemed inadmissible, then the refusal of funds for such an examination would have been proper. If, however, special circumstances would appear to justify the use of the results of a polygraph examination, then, under the Act, *supra,* any such authorization would lie within the sound discretion of the district court. We find no abuse of such discretion in this case.

In light of the foregoing, the judgment of conviction and sentence appealed from is affirmed.

Affirmed.