UNITED STATES of America

v.

Mary Beckham GRANT.

Crim. No. 79–86.

United States District Court,
D. South Carolina,
Rock Hill Division.

July 16, 1979.

---

**6.** *See* n.1 *infra.*

Thomas E. Lydon, Jr., U. S. Atty. for the District of South Carolina, Columbia, S.C., and Marvin L. Smith, Asst. U. S. Atty., Columbia, S.C., for the United States of America.

Thomas A. McKinney, of McKinney & Harrelson, Rock Hill, S.C., for Mary Beckham Grant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

HEMPHILL, District Judge.

By motion filed June 1, 1979, defendant seeks of this court an order dismissing a criminal indictment which charges Mary Beckham Grant with embezzlement from the Piedmont Production Credit Association, Monroe, North Carolina, Rock Hill, South Carolina, branch, on six (6) separate occasions, accumulated in six separate counts in an indictment filed May 8, 1979. She pled not guilty on May 17, 1979. Defendant says that the indictment should be dismissed because the Assistant United States Attorney agreed to dismiss, without prejudice, a previous information against the accused and not reindict if (1) a "confession" to the crime by James Albert Jones was found to be voluntarily given; (2) defendant took and "passed" a lie detector test and (3) no additional evidence was found implicating the said Mary Beckham Grant with the crime. It appears that James Albert Jones "confessed" to the crime with which accused is now charged in the presence of two regular Rock Hill Police Officers and the husband of Mary Beckham Grant, also a Rock Hill Police Officer, was found guilty of the crime of stealing from the Production Credit Association and sent to the penitentiary.[1] Mary Beckham Grant

1. Later the Attorney General of South Carolina determined that he was not guilty and he was freed, but has since departed this life, leaving no address, and is not now amenable to subpoena.

did take and "pass" a lie detector test, but there is some dispute as to whether the government has discovered any additional evidence exists implicating the accused with the crime. This court is convinced that such exists.

In his return to the motion, the United States Attorney sets forth that the criminal information was previously dismissed, without prejudice, to reindict generally with the understanding that the criminal prosecution not be reinstituted unless there were further developments in the case. The United States Attorney says, and it is not disputed, that there was no grant of immunity given to Mary Beckham Grant[2] and that the United States Attorney did not have the authority to grant immunity even if such were desired.[3] The return stated that after information had been brought to the attention of the United States Attorney, that Jones had been sentenced to six years for the crime with which the accused was charged, the Attorney caused a civil rights investigation to be made as to Jones which established that Jones' "confession" was not voluntarily given and an investigation by the F.B.I. revealed that the physical description of the premises where the money was embezzled would make it almost impossible for Jones to steal the money in question. The United States Attorney says in his return that Jones was tried while defendant knew that she was the guilty party and her husband had been present at the supposed "confession." The long affidavit by the United States Attorney sets forth that:

> In two of the embezzlements, Mrs. Grant made writings in the file extending the maturity date of the loans, which had the effect of allowing the borrowers to skip one payment, thereby covering up those embezzlements. Only the Manager of

the office had the authority to extend the maturity date of a loan by preparing a certain form which was required to be subsequently approved by the executive committee. This was not done.

— and —

> In one of the embezzlements, a borrower made a cash payment to be applied to his life insurance premium and his monthly loan payment. Mrs. Grant deposited in the bank and gave him credit for that amount which applied to his insurance premium but did not deposit or give him credit for that amount which applied to his monthly loan payment.[4]

It affirmatively appears that this was probably not known to the government at the time of the prosecution of Jones, and if the United States Attorney's Office knew of the prosecution of Jones at all, or had any idea about the same, additional information is revealed, according to the government's theory, that Jones could not have committed the crime for which the accused is indicted.

Initially, it must be remembered that this is not a plea bargaining to a pending indictment. The United States made a proposition, but not a bargain, as the United States Attorney got nothing in return for his charity.[5] The accused gave the government nothing in return for charity. If there had been a trade, this court would enforce it on directions issued by the Fourth Circuit in *Cooper v. United States,* 594 F.2d 12 (4th Cir., 1979).

This court is mindful of the general rule set forth in *United States v. Thomas,* 580 F.2d 1036, 1038 (10th Cir., 1978) wherein the court said:

---

**2.** Fed.R.Crim.P. 48(a) provides: Dismissal

> (a) By Attorney for Government. The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

**3.** See *United States v. Carter,* 454 F.2d 426, 428 (4th Cir., 1972) where it is said that the court must approve a grant of immunity.

**4.** This, coupled with the discovery the "confession" was not voluntary, etc., was/is additional information.

**5.** "Charity" is a kind description.

An unkept promise by the Government in a plea bargaining situation which results in the entry of a plea of guilty in a criminal proceeding may justify either a setting aside of the plea of guilty or a remand for the purpose of compelling specific performance of the Government promise.

The record reflects that in *Thomas* the judge accepted a change of plea, did not later impose a sentence, when he had promised "on behalf of the judiciary that Thomas would not be sentenced until after all the other charges are filed and you have pled guilty to them." The judge who made the promise did not sentence Thomas. No such situation exists in this case, nor does the situation similar to that case of the co-defendant, Walters, against whom the judge dismissed the indictment, which the Tenth Circuit reinstated.

In *United States v. Carter,* 454 F.2d 426, 428 (4th Cir., 1972), the government said the indictment may be dismissed:

If it further appears that the defendant, to his prejudice, performed his part of the agreement while the Government did not, the indictment may be dismissed.

There is no prejudice in this case to defendant by what she did. She took a lie detector test. There is a conflict now as to whether or not the polygraph test was "passed" by the accused. It shows the unreliability of the polygraph test, but further shows that the same never should have been interjected in this particular case.

This court finds no reason to try an issue, ordinarily the responsibility of a jury, by use of a polygraph. In *Frye v. United States,* 54 U.S.App.D.C. 46, 293 F. 1013, (D.C.C.A., 1923), the first reported federal case on polygraph admissibility, the court stated the appropriate standard for the judicial determination of whether to use newly developed scientific and experimental evidence should be whether the scientific principle or discovery is "sufficiently established to have gained general acceptance in the particular field in which it belongs." The polygraph was found not to possess such standing and scientific recognition among physiological and psychological authorities. The *Frye* standard is still often applied in discussions of the polygraph and other new scientific techniques. See, e. g., *United States v. Skeens,* 161 U.S.App.D.C. 131, 494 F.2d 1050 (D.C.C.A., 1974) (polygraphs); *United States v. Franks,* 511 F.2d 25, 33 (6th Cir., 1975), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693 (spectrographic analysis); *United States v. Stifel,* 433 F.2d 431, 438 (6th Cir., 1970), *cert. denied,* 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531 (neutron activation analysis); *Lindsey v. United States,* 237 F.2d 893, 896 (9th Cir., 1950) (truth serum or sodium pentothal); *United States v. Bruno,* 333 F.Supp. 570, 574 (E.D.Pa., 1971) (ink identification). This court would proceed with caution on the basis of *Frye.*

In *United States v. Alexander,* 526 F.2d 161, 163 (8th Cir., 1975), the court indicated that reliability is one of the most important factors in determining "general acceptance." Courts such as *Alexander* which have considered admitting results from polygraph tests have noted their willingness to accept proven scientific techniques, but have rejected polygraphs following their hearing of expert testimony and review of the extensive body of articles and text on polygraphs. Though polygraph methodology and examiner training have substantially improved since the primitive systolic blood test employed in *Frye,* the polygraph has yet to attain sufficient scientific acceptance among experts in polygraphy, psychiatry, physiology, psychophysiology, neurophysiology and other related disciplines to justify admission. *United States v. Alexander,* id. at 164. Following three days of testimony, the trial judge in *United States v. Urquidez,* 356 F.Supp. 1363 (D.C. Cal., 1973), found the most obvious conclusion to be made about polygraphs to be that there are many variables other than the ultimate test of truth or falsity influencing results. He noted the numerous disagreements among "experts" about proper test administration and how results should be interpreted.

The "general acceptance" standard is often utilized in conjunction with considerations of the relevance, prejudice and burden on judicial time of polygraph evidence. These considerations rather than a "general acceptance" standard concerning evidential admission have been employed in Rules 401–403 of the Federal Rules of Evidence. The concepts present in the Rules strengthen the arguments against admission. See generally Abbell, *Polygraph Evidence: The Case Against Admissibility in Federal Criminal Trials,* 15 Am.Crim.L.Rev. 29, 54–59 (1977).

The eight Courts of Appeals which have considered the admission of unstipulated polygraph examinations have uniformly held polygraph results inadmissible. *United States v. Bando,* 244 F.2d 833, 841 (2nd Cir.) *cert. denied,* 355 U.S. 844, 78 S.Ct. 67, 2 L.Ed.2d 53 (1957) (dicta); *United States v. Masri,* 547 F.2d 932 (5th Cir., 1977); *United States v. Cochran,* 499 F.2d 380, 393 (5th Cir., 1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825 (1975); *United States v. Gloria,* 494 F.2d 477, 483 (5th Cir., 1974), *cert. denied,* 419 U.S. 995, 95 S.Ct. 306, 42 L.Ed.2d 267 (1975); *United States v. Pacheco,* 489 F.2d 554, 566 (5th Cir., 1974), *cert. denied,* 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975); *United States v. Frogge,* 476 F.2d 969, 970 (5th Cir.), *cert. denied,* 414 U.S. 849, 94 S.Ct. 138, 38 L.Ed.2d 97 (1973); *United States v. Mayes,* 512 F.2d 637, 648 n. 6 (6th Cir.), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975); *United States v. Noel,* 490 F.2d 89, 90 (6th Cir., 1974); *United States v. Tremont,* 351 F.2d 144, 146 (6th Cir., 1965), *cert. denied,* 383 U.S. 944, 86 S.Ct. 1198, 16 L.Ed.2d 207 (1966); *United States v. Sweet,* 548 F.2d 198 (7th Cir., 1977); *United States v. Infelice,* 506 F.2d 1358, 1365 (7th Cir., 1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 802 (1975); *United States v. Penick,* 496 F.2d 1105, 1109–10 (7th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 141 (1974); *United States v. Chastain,* 435 F.2d 686, 687 (7th Cir., 1970); *United States v. Smith,* 552 F.2d 257 (8th Cir., 1977); *United States v. Oliver,* 525 F.2d 731, 737 (8th Cir., 1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976); *United States v. Alexander,* 526 F.2d 161 (8th Cir., 1975); *United States v. Sockel,* 478 F.2d 1134, 1135–36 (8th Cir., 1973); *McCroskey v. United States,* 339 F.2d 895, 899 (8th Cir., 1965); *United States v. Benveniste,* 564 F.2d 335 (9th Cir., 1977); *United States v. Flores,* 540 F.2d 432, 436–37 (9th Cir., 1976); *United States v. Marshall,* 526 F.2d 1349, 1360 (9th Cir., 1975), *cert. denied,* 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976); *United States v. Demma,* 523 F.2d 981, 987 (9th Cir., 1975) (*en banc*); *United States v. Watts,* 502 F.2d 726, 728 (9th Cir., 1974); *United States v. Bagsby,* 489 F.2d 725, 726–27 (9th Cir., 1973); *United States v. Alvarez,* 472 F.2d 111, 113 (9th Cir.), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973); *United States v. Jenkins,* 470 F.2d 1061, 1064 (9th Cir., 1972), *cert. denied,* 411 U.S. 920, 93 S.Ct. 1544, 36 L.Ed.2d 313 (1973); *United States v. DeBetham,* 470 F.2d 1367, 1368 (9th Cir., 1972), *cert. denied,* 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973); *United States v. Salazar-Gaeta,* 447 F.2d 468, 469 (9th Cir., 1971); *United States v. Sadrzadeh,* 440 F.2d 389, 390 (9th Cir.), *cert. denied,* 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 88 (1971); *United States v. Russo,* 527 F.2d 1051, 1058–59 (10th Cir., 1975), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 831 (1976); *United States v. Rodgers,* 419 F.2d 1315, 1319 (9th Cir., 1969); *United States v. Wainwright,* 413 F.2d 796, 802–03 (9th Cir., 1969); *Marks v. United States,* 260 F.2d 377, 382 (9th Cir., 1958), *cert. denied,* 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 (1959); *United States v. Skeens,* 161 U.S.App.D.C. 131, 134, 494 F.2d 1050, 1053 (1974); *United States v. Zeiger,* 155 U.S.App.D.C. 11, 475 F.2d 1280 (D.C.Cir., 1972); *Frye v. United States,* 54 U.S.App.D.C. 46, 293 F. 1013, 1014 (D.C.Cir., 1923).

Some circuit courts while affirming district court denials of admission have acknowledged that there may be situations where admission is acceptable, and that admission is a matter within the sound discretion of the trial judge. *See, e. g., United States v. Chastain, supra,* at 687 (7th Cir.);

*United States v. Oliver, supra,* at 737 (8th Cir.); *United States v. Marshall, supra,* at 1360 (9th Cir.); *United States v. Russo, supra,* at 1059 (10th Cir.). Courts willing to permit district court discretion require that proponents of polygraph evidence have the burden of laying a proper foundation for showing the underlying scientific basis and reliability of expert testimony. *United States v. DeBetham,* 470 F.2d 1367 (9th Cir., 1972), *cert. denied,* 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973). With the polygraphs misleading reputation as a "truthteller", the widespread debate concerning its reliability, and the critical requirement of competent examiner and judicial problems of self-incrimination and hearsay, a trial court will rarely abuse its discretion by refusing to admit the evidence, even for limited purposes and under limited conditions. *United States v. Marshall,* 526 F.2d 1349, 1360 (9th Cir., 1975).

Though the overwhelming majority of courts have rejected polygraph evidence in criminal cases, a number of state courts and a few federal district court decisions support a general policy of admission. *See,* e. g., *United States v. Zeiger,* 350 F.Supp. 685, 689 (D.D.C.), *rev'd,* 155 U.S.App.D.C. 11, 475 F.2d 1280 (1972); *United States v. Ridling,* 350 F.Supp. 90 (E.D.Mich., 1972) (admitted on condition court appoint examiner; decision mooted when examination proved inconclusive); *United States v. DeBetham,* 348 F.Supp. 1377 (S.D.Cal.), *aff'd,* 470 F.2d 1367 (9th Cir., 1972), *cert. denied,* 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973) (viewed tests positively but refused admission on basis of precedents); *State v. Sims,* 52 Ohio Misc. 31, 369 N.E.2d 24 (1977); *Commonwealth v. A Juvenile,* 365 Mass. 421, 313 N.E.2d 120 (1974).

██ Other courts have allowed polygraph evidence in special situations. If a polygraph examination conducted on a key government witness indicates the witness is lying then under the *Brady* doctrine this may be disclosed to the jury as exculpatory evidence useful to impeach the witness' credibility. *United States v. Hart,* 344 F.Supp. 522 (E.D.N.Y., 1971). But see *Ogden v. Wolff,* 522 F.2d 816 (8th Cir., 1975). The government has been allowed to disclose the results of an examination where the voluntariness of a confession is at issue and the defendant confessed following the exam. *Tyler v. United States,* 90 U.S.App. D.C. 2, 9, 193 F.2d 24, 31, *cert. denied,* 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326 (1952); *United States v. Bad Cob,* 560 F.2d 877 (8th Cir., 1977). Results admitted experimentally towards weakest count of four count indictment.) *United States v. Penick,* 496 F.2d 1105, 1109 (7th Cir., 1974), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 141 (1974).[6]

South Carolina, by way of dicta, has indicated, in *State v. Britt,* 235 S.C. 395, 111 S.E.2d 669, 683 (1959) that lie detector (the same as polygraph) tests should not be accepted, quoting from 23 A.L.R.2d at page 1308:

It would appear, at least in the absence of stipulation, that the courts almost uniformly reject the results of lie detector tests when offered in evidence for the purpose of establishing the guilt or innocence of one accused of a crime, whether the accused or the prosecution seeks its introduction. The reason most commonly assigned for the exclusion of such evidence is the contention that the lie detector has not as yet attained scientific acceptance as a reliable and accurate means of ascertaining truth or deception.

As to the view in other state jurisdictions, see *State v. Lowry,* 163 Kan. 622, 185 P.2d 147; *State v. Cole,* 354 Mo. 181, 188 S.W.2d 43, 189 S.W.2d 541, *People v. Wochnick,* 98 Cal.App.2d 124, 219 P.2d 70; *Lee v. Commonwealth of Virginia,* 200 Va. 233, 105 S.E.2d 152, 154 (1958).

██ Prior to dismissal of the information, without prejudice, as is set forth in the Affidavit of United States Attorney Smith, defense counsel was told that the govern-

---

**6.** Much of the information contained in the preceding paragraphs is taken from material furnished by the United States Attorney.

ment neither had the power nor the desire to grant immunity to the defendant. Neither a United States Attorney nor his Assistant possesses authority to grant immunity. This must come from the Attorney General of the United States under appropriate statutes. *See United States v. Gorham,* 173 U.S.App.D.C. 139, 523 F.2d 1088 (1975). It is unquestioned that an information may be dismissed and the defendant later indicted, provided the same was done without prejudice. *See United States v. Chase,* 372 F.2d 453, 463 (4th Cir., 1967), *cert. denied* 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626.

■ In *United States v. Evers,* 552 F.2d 1119 (5th Cir., 1977), *cert. denied* 434 U.S. 926, 98 S.Ct. 407, 54 L.Ed.2d 284, the court held:

> Under Fed.R.Crim.P. 48(a), a prosecutor is normally free to dismiss one indictment and bring another based on further developments of his case.

In agreeing with defense counsel that the case would be dismissed if Mrs. Grant passed a polygraph examination and if the confession executed by James A. Jones were voluntary, Smith now says it was anticipated that this was to be a part of a prosecution decision, and that the office of the United States Attorney would exercise its judgment as to whether the defendant had passed the polygraph examination and whether the statement signed by Jones was voluntarily given. It was not anticipated that the defendant would make the decision, nor was it anticipated that the court would make such decision. A decision whether to present a case to a Grand Jury is ordinarily an executive function and not one that is ordinarily left to a defendant or to the Judicial Department of the United States.

In determining whether the confession of James Albert Jones was voluntarily given, the Assistant United States Attorney took into consideration the fact that in his opinion the said Jones was arrested without probable cause and taken to the Police Department; that the husband of the defendant was instrumental in obtaining the con-

fession; that the two F.B.I. agents who later interviewed the said Jones at great length were convinced that Jones was telling the truth when he stated that he denied the theft of the money but later agreed to sign a confession only through fear and coercion by the officers involved; that Jones was given a polygraph examination by Lansing P. Logan of the F.B.I., and Agent Logan reported that Jones was truthful in stating that he did not steal the money and that the confession was obtained through fear and coercion; that the attorney representing Jones at his trial stated that he was convinced that Jones was innocent; that Jones was released from the penitentiary when the facts of the case came to the attention of the State Attorney General; the physical layout of the premises where the money disappeared would make it almost impossible for Jones to take the money and that Jones, having only performed one day's work at the premises, would have no knowledge of how to manipulate the company books; that Jones was a young, black male, an alcoholic subject to frequent epileptic seizures, and the type of person who could be easily coerced.

Most of the above matters are matters which are not ordinarily within the knowledge of the Judicial Department and are matters which enter into the decision of the Executive Department to prosecute or not to prosecute. In *United States v. Wong Kim Bo,* 466 F.2d 1298 (5th Cir., 1972), the court stated that the determination of whether to prosecute or nol pros is the exclusive responsibility of the Executive, acting through the Attorney General. In *United States v. Marshall,* 463 F.2d 1211 (5th Cir., 1972), the court said that the decision of whether or not to prosecute rests with the United States Attorney.

■ At the hearing before this court, Paul K. Minor, who is in charge of all the F.B.I. polygraph examiners in the United States, testified unequivocally that Mrs. Grant did not pass the polygraph examination. He analyzed the relevant questions on the three polygraph charts of Mrs. Grant and found that she engaged in deception in

each of the three charts. He then made a numerical evaluation of the. charts and found that she was not telling the truth in an overwhelming negative score. F.B.I. Agent Logan testified that he examined the first chart and found that she engaged in deception. Lt. Wyndham of SLED, the head of the Polygraph Division, stated that she engaged in deception on the first chart that he examined on question 4 (Do you know for sure who stole the $84.00 payment that McCarter made?), and question 5 (Did you steal the $84.00 payment that McCarter made?). It is not necessary that this be evidence to be used in the trial; it is obvious that this is "additional evidence linking Mary Beckham Grant with the crime." The United States Attorney has every right to proceed, and the accused will be given a fair trial.

The motion to dismiss is denied.

AND IT IS SO ORDERED.