**Lawrence Raymond SILVER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–84–122.

Court of Criminal Appeals of Oklahoma.

May 22, 1987.

Rehearing Denied June 18, 1987.

As Corrected June 19, 1987.

Elaine Meek, Asst. Appellant Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Lawrence Raymond Silver, was convicted of Robbery with a Firearm, Rape, and two seperate counts of Rape by Instrumentality, in the District Court of Seminole County, Case No. CRF–83–72. Appellant was sentenced to fifteen (15) years imprisonment for the Robbery, twenty (20) years imprisonment for the Rape and twenty (20) years imprisonment for each count of Rape by Instrumentality, the sentences to be served consecutively. We affirm.

At approximately 3:00 a.m. on December 9, 1982, a man armed with either a rifle or a shotgun broke into the rural home of Mr. and Mrs. F. The man held the elderly couple captive in their bedroom under threat of death and indicated that he had entered the house to commit robbery. For the next hour, the intruder terrorized the couple and ransacked their home while demanding money and diamonds. During that time Mrs F. was forced to commit oral sodomy, was raped at least three times and both Mr. and Mrs. F. were subjected to an act of rape by instrumentality with the barrel of the gun. The man took six hundred dollars in cash from Mrs. F.'s purse, a cigar box containing approximately two hundred forty dollars worth of fifty-cent coins, twenty to forty dollars from the victim's wallets and one hundred twenty dollars from the headboard of their bed. He also took a pair of Mr. F.'s black knit gloves which he wore throughout the incident and a Remington Model 11 12–gauge shotgun with an adjustable choke. The intruder then tied the victims together on the floor and made his escape. Shortly thereafter, the two were able to free themselves. They immediately dressed, went to their neighbor's house and called the police.

Neither Mr. or Mrs. F. got a good look at the assailant. Mrs. F., however, was able to give a partial description of the man. She stated that he was over six feet, had a slender build and a fair complexion, spoke with an hispanic accent, wore tan pants and brown shoes and had the odor of alcohol on his breath. She also thought he had a very short beard.

After a lengthly investigation, the O.S.B.I began to put together a complicated circumstantial case against the appellant. The investigation revealed that the appellant had previously lived in the area and knew the victims. As a teenager, he had done some work for Mr. F. and had been inside the victim's house. On the night in question, he had been drinking at a local nightclub and had gone to the nearby homes of two friends a short time before the incident. He had arrived at the home of one of the friends in a drunken condition sometime around midnight. The two talked for quite a while and then the appellant borrowed a .410 gauge shotgun and some shells to go rabbit hunting. He left

about 2:00 a.m. Several minutes later, at about 2:17 a.m., he showed up at the home of the second friend and claimed that he needed help to pull the car of some raccoon hunters out of a ditch. The friend declined to help, and the appellant left. A few hours later, at approximately 8:00 a.m., the appellant reappeared at the home of the first friend and returned the shotgun and shells. The two talked for a while and the appellant said that he wanted to show the friend a shotgun he had in his car. The gun was a 12–gauge shotgun with an adjustable choke.

While they were inspecting the gun, the friend mentioned that the appellant had a hubcap missing from his car. The appellant immediately removed the other three hubcaps and asked his friend to accompany him to a local auto salvage for replacements. They started for the salvage, but, after they drove past the home of Mr. and Mrs. F. and observed the police investigation in progress, the appellant stopped the car on a nearby county road, walked back and opened the trunk and stayed out of sight behind the car for several minutes. Mr. F.'s black knit gloves and cigar box from the burglary were later found in this area. The appellant then returned to the car, said he had just remembered that the salvage was closed and drove his friend back home. When they reached the house, he went inside and got the 12–gauge shotgun, made the comment "this gun is too hot" and left.

A day or so later, the appellant encountered his friend's wife and told her that he needed to get a jacket that he had left at the house. She gave him her house keys and the appellant went to get the jacket. When she and her husband came home that evening, they discovered that both the jacket and the .410 gauge shotgun which the appellant had previously borrowed were gone. The friend later questioned the appellant about the missing gun during a telephone conversation, and the appellant indicated that the friend might be able to get the gun back after things cooled down.

The investigation also revealed that the day after the incident the appellant bought his girlfriend a $546.00 diamond ring. The two had quarreled the day before the crime and the appellant apparently bought the diamond as an apology. The appellant was able to make the purchase in cash even though he only worked part-time and occasionally had to borrow money from his parents.

As the investigation proceeded, the O.S.B.I decided to interview the appellant. When questioned about his activities on the night of the crime, the appellant initially denied that he had been in the area or that he had been in possession of a shotgun.

When the appellant was finally arrested for the crime in April of 1983, the O.S.B.I conducted a hair comparison analysis. The investigation of the crime scene had turned up a number of unidentified hairs on the victim's sheets and blankets and on the panties and nightgown of Mrs. F. The analysis indicated that one scalp hair found on the sheets and blankets and one pubic hair found on the panties and nightgown were consistant in every characteristic with comparison hair samples taken from the appellant.

At trial, the appellant relied on an alibi defense. The appellant's stepfather testified that the appellant was at home at 3:50 a.m. on the morning of the incident. He stated that he usually awoke around 4:00 a.m. and that it was his habit to turn on the television to get the correct time. He further stated that on the morning in question the appellant was sitting at the kitchen table smoking a cigarette when he arose. Additional testimony indicated that the appellant did not own any tan pants and that he always wore blue jeans. There was also testimony that the appellant did not speak any foreign languages and had never been heard to affect a spanish accent.

I.

■ In his first assignment, appellant contends that the trial judge erred when he failed to grant a mistrial after the jury foreman reported that his family had been threatened during the trial. We disagree.

The jury foreman was contacted at home after the second day of trial by an anony-

mous caller and was told not to report back for jury duty or to vote for acquittal if he did. The safety of his wife and children was threatened if he failed to follow instructions. The foreman reported the contact to the trial judge, who immediately held an in-chambers hearing in the presence of the appellant, his attorney, the prosecutors and the jury foreman. The judge forcefully told the foreman that the appellant had not made the call and that it could have come from the supporters of either side trying to prejudice the jury against the other. The judge carefully inquired as to possible prejudice and was repeatedly assured by the foreman that the call would not affect his deliberation or decision and that he had not and would not mention the call to the other jurors. Based on those assurances, the judge ordered the trial to proceed. The appellant never objected to the judge's ruling nor did he request a substitute juror.

The appellant relies primarily on *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954) and *Remmer v. United States*, 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956). In *Remmer I*, the jury foreman had been contacted anonymously and offered money in exchange for a vote of acquittal. The judge notified the F.B.I., but did not tell the defense about the contact until after the trial. The Supreme Court reversed because of the lack of a hearing on the issue of prejudice. In *Remmer II*, the Court reviewed the transcript of a hearing which had been held on remand, ruled that the juror appeared to have been under psychological pressure due to the bribe offer and remanded for a new trial. Here, by contrast, the trial court held a full hearing and determined that the juror had not been prejudiced and could render a fairly considered verdict. Accordingly, this assignment of error is without merit.

## II.

 The appellant next contends that the trial court erred in permitting the introduction of prejudicial other crimes evidence. Appellant complains about testimony which allegedly indicated that he: a)

was driving while intoxicated; b) smoked marijuana on the aborted trip to the salvage yard; c) dated while still married, which he contends implied that he committed adultery; d) told jail cellmates that he was taking "speed" the night of the crime; and, e) that he threatened his cellmates when he found out they were going to testify. He also alleges the prosecutor made statements without evidence that he was high on narcotics the night of the crime and that he had thrown things out of the trunk of the car when he stopped on the way to the salvage yard. Appellant contends that all of the evidence was irrelevant and was admitted without the notice required by *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979).

We first note that appellant did not object to any of the testimony about which he now complains. Failure to object waives all but fundamental error. *Anderson v. State*, 641 P.2d 555 (Okl.Cr.1982); Title 12 O.S.1981, § 2104. Moreover, it is well established that unless there is a reasonable possibility that improperly admitted evidence contributed to the conviction, reversal is not required. *Frazier v. State*, 607 P.2d 709 (Okl.Cr.1980). Here, most of the testimony and comments were either inhibited by the trial judge, were an integral part of the transaction, were about crimes apparent only to defense counsel, or were within the liberal range of argument permitted to the prosecution. In the circumstances, we are of the opinion that none of the comments or testimony was sufficiently prejudicial to have influenced the jury verdict. *Cf. Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980).

## III.

 In his third assignment, the appellant contends that the trial court erred by failing to instruct the jury that evidence of other crimes could not be used to determine guilt. The appellant relies on *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979), in which this Court held that a limiting instruction on the other crimes evidence should be given. In this case, however, appellant failed to request a cautionary in-

struction. In *Scott v. State,* 663 P.2d 17 (Okl.Cr.1983), we held that the failure to request a limiting instruction acted as a waiver. Therefore, in the cirumstances, we hold that the trial court's failure to instruct on other crimes evidence was not error.

### IV.

 In his fourth assignment of error, the appellant contends that prosecutorial misconduct, including the use of allegedly perjured jail inmate testimony, deprived him of a fair trial. We have examined the record and find that none of the cited conduct was sufficiently prejudicial to require a reversal or modification of appellant's sentence.

### V.

The appellant next contends that he was denied the opportunity to properly confront and cross-examine witnesses during trial because the State failed to comply with the trial court's order to give the defense a copy of all of the appellant's pretrial statements. We disagree.

In this case, the prosecution presented testimony by an O.S.B.I. agent as to certain statements made by the appellant during an investigatory interview. The prosecution failed to provide a copy of the statement to the defense prior to trial. The failure to comply with the trial court's order was error. However, when the State first attempted to present the evidence, the trial judge delayed the testimony for twenty-four hours in order to give the defense time to study the statement and interview the witness. In the circumstances, we hold that the trial judge's action cured the error. In the future, however, trial courts should attempt to determine prior to trial whether their production orders have been obeyed. If, after making an inquiry, it is discovered during trial that there had been a failure to comply, the evidence should be excluded.

### VI.

Finally, the appellant contends that the evidence identifying him as the assailant was insufficient to sustain his convic-

tion beyond a reasonable doubt. Again, we disagree.

The standard for this Court's review of the sufficiency of the evidence is whether any rational trier of fact viewing the evidence in the light most favorable to the State could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In this case, although the victims were unable to identify the appellant as their assailant, there was ample evidence of his involvement. We therefore find this assignment of error to be without merit.

Accordingly, for the foregoing reasons, the judgment and sentence of the trial court is AFFIRMED.

BRETT, P.J., concurs.

BUSSEY, J., concurs in results.