WES JOSEPH PERTGEN, Appellant, *v.* THE STATE
OF NEVADA, Respondent.

No. 18060

May 22, 1989                                        774 P.2d 429

*Beury & Schubel,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, and *James Tufteland,* Deputy, and *Daniel Seaton,* Deputy, Clark County, for Respondent.

## OPINION

*Per Curiam:*

On July 3, 1986, appellant Wes Pertgen brutally murdered his landlord. He then bound the landlord's feet and mouth with duct tape and put the body in a refrigerator. The next day, Pertgen met a woman and offered her money to engage in sexual acts with him. When the woman refused, Pertgen beat her and sexually assaulted her. Pertgen then chained the woman's hands and feet, wrapped her in a blanket, threw her in a drainage ditch, and covered her with sagebrush.

Later that day, Pertgen went to a hospital emergency room, put two guns on the counter, and asked for help. The hospital security guards took Pertgen to a holding cell in the hospital. Before anyone questioned or even spoke to Pertgen, he announced to the security guards and an attending police officer that he had hit a girl in the head and left her bleeding, and that he would reveal her location in exchange for a cigarette. When that announcement provoked no response from anyone present, Pertgen volunteered the location of the landlord's body. A police officer arrived soon thereafter and advised Pertgen of his rights to remain silent and to obtain the assistance of legal counsel. Pertgen then waived his rights and confessed his crimes.

A jury found Pertgen guilty of first-degree murder with use of a deadly weapon and sentenced him to death. The jury also found Pertgen guilty of first-degree kidnapping with use of a deadly weapon, sexual assault with use of a deadly weapon, attempted murder with use of a deadly weapon, and possession of a firearm by an ex-felon. For committing these crimes, Pertgen was sentenced to a total of four consecutive life prison terms without

possibility of parole, two consecutive twenty-year prison terms, and one six-year term.

Pertgen now alleges that a number of errors occurred during the proceedings below which deprived him of his right to a fair trial. We disagree.

Pertgen first argues that his attorneys and the trial court failed to provide him access to adequate psychiatric testing to support his insanity defense. However, the record reveals that Pertgen received at least as much psychiatric testing as he was entitled to under the United States Constitution. *See* Ake v. Oklahoma, 470 U.S. 68, 82-83 (1985).

In *Ake,* the United States Supreme Court noted that one of the principle reasons a defendant needed the assistance of a psychiatrist was to "determine whether the insanity defense is viable" in the defendant's case. 470 U.S. at 82-83. The evidence in the record reveals that Pertgen had access to three psychiatrists to assist him in determining the viability of the insanity defense in his case.

Pertgen's attorneys hired two undisputedly competent psychiatrists to examine Pertgen. After interviewing Pertgen, extensively reviewing his psychiatric history and his confession, and after discussing Pertgen's case with defense counsel, both psychiatrists independently concluded that Pertgen was sane at the time he committed the crimes and was competent to stand trial. A State-employed psychiatrist also examined Pertgen. Although the State psychiatrist prescribed anti-psychotic medication for Pertgen, the doctor was unwilling to express an opinion as to Pertgen's sanity.[1]

Because none of the doctors who examined Pertgen before trial supported his insanity theory, we cannot now say that trial counsels' failure to request the State-funded opinion of yet another psychiatrist denied Pertgen his right to a fair trial or the effective assistance of counsel. *See* Strickland v. Washington, 466 U.S. 668 (1984). Neither can we say that the trial court was constitutionally obligated, under such circumstances, to order any additional psychiatric testing *sua sponte. See* Thompson v. Wainwright, 787 F.2d 1447, 1459 (11th Cir. 1986); Bowden v. Kemp, 767 F.2d 761 (11th Cir. 1985). Nothing in the *Ake* opinion suggests that a State is constitutionally obligated to provide a defendant as many psychiatrists as it takes to come up with one who will proclaim the defendant insane at the time of his offense.[2]

---

[1] A psychologist at the University Medical Center also examined Pertgen on the day he confessed his crimes. She concluded that Pertgen was sane at that time and should not be admitted to the hospital psychiatric ward.

[2] *Ake* expressly negates the proposition "that the indigent defendant has a constitutional right to choose a psychiatrist of his own personal liking or to receive funds to hire his own." 470 U.S. at 83.

The next issue involves an incident of jury tampering. Near the end of the trial, three jurors received anonymous phone calls. The caller offered the jurors money if they voted to acquit, but threatened to kill them if they voted to convict Pertgen.[3]

The court and counsel questioned each juror regarding the matter. All three jurors assured the court that they considered the call a "crank call," that the call would not affect their decision, and that they had not and would not discuss the matter with other jurors. Following these interviews, Pertgen moved for a mistrial. The court, expressing its belief in the jurors' assurances of impartiality, denied the motion. Pertgen now alleges this denial constitutes error. We disagree.

In a case involving similar circumstances, we held that once the district court has "stated its satisfaction that the incident would not contaminate either the verdict or the jury delibera- tions[,] . . . appellant carries the burden of showing he has been prejudiced by the threatening telephone call." Lewis v. State, 93 Nev. 638, 640, 572 P.2d 211, 212 (1977). Pertgen claims preju- dice in the fact that the jury, at one point, requested "permission to discuss the reasons for three members of the jury going to the judge's chambers." The district court, however, cured any poten- tial prejudice that may have resulted from the curious jurors' speculation on the matter when it admonished the jury that the interviews with the individual jurors had "nothing to do with the guilt or the innocence of the defendant, and you [the jury] are not to speculate or guess or surmise as to any reasons why those three jurors may have spent some time in the judge's chambers." We are not willing to presume that the jury failed to follow the court's admonition. See Stickney v. State, 93 Nev. 285, 287, 564 P.2d 604, 605 (1977).

Because Pertgen does not point to any evidence in the record showing that this incident in any way affected the verdict, we conclude that the telephone calls did not prejudice Pertgen's defense and that the court did not abuse its discretion in denying Pertgen's motion for mistrial. See State v. Coburn, 556 P.2d 376, 380 (Kan. 1976).

Pertgen next argues that the district court should have declared a mistrial because it improperly vouched for a key witness' credibility. The alleged impropriety occurred during the jury voir dire when one of the prospective jurors, in response to a question from the court, indicated that she knew one of the potential

---

[3]Although the jurors never knew who called them, it is apparent now that Pertgen himself made the calls.

witnesses for the State and that she would believe that witness' testimony. The judge then stated:

> I am not suggesting [the witness] is not going to be telling the truth because she is going to be telling the truth. There is no question about that. But what I am saying is she is one of the witnesses in the case. Would you put undue emphasis more on her testimony than on somebody else's testimony?

The judge later explained to the jury that what he "[m]eant to say by that statement was that [the witness] would be sworn under oath and would be sworn to tell the truth, as all the witnesses would. But as to whether or not, in fact, you want to believe that testimony, it is up to you to decide. You make the determination as regarding the credibility of any witness that testifies."[4]

That judges may not comment to the jury on the credibility of witnesses is a settled matter of Nevada constitutional law, case law, and statute. *See* Gordon v. Hurtado, 91 Nev. 641, 541 P.2d 533 (1975); Wheeler v. Twin Lakes Riding Stable, Inc., 88 Nev. 485, 550 P.2d 572 (1972). However, it is also established law that "violations of the constitutional and statutory prohibitions are subject to the rule of harmless error." *Gordon,* 91 Nev. at 645; *Wheeler,* 88 Nev. at 487. In light of the court's subsequent explanation and instruction to the jury regarding the comment about the witness' truthfulness, we conclude the comment was harmless and did not warrant a mistrial.

Pertgen next argues that the court erred in admitting certain "prior crime evidence" during the penalty phase of his trial. The allegedly improper evidence consisted of the testimony of a New Jersey prosecutor indicating that Pertgen had once faced a charge of "aggravated sexual assault" in New Jersey, but that the jury in that case was unable to reach a verdict on that charge.[5] Although the evidence backing the New Jersey charge was arguably "dubious" or "tenuous,"[6] its admission in this case was harmless beyond a reasonable doubt. Other evidence overwhelmingly sup-

---

[4]The court offered this clarification before Pertgen ever called for a mistrial on this issue.

[5]The jury in that same New Jersey proceeding found Pertgen guilty of "criminal restraint" and *not guilty* of two other sexual assault charges. The court in this case properly admitted the conviction evidence as evidence of a statutory aggravating circumstance. *See* NRS 200.033. The district court was also correct in precluding the New Jersey prosecutor from discussing the two charges resulting in not guilty verdicts.

[6]*See* Crump v. State, 102 Nev. 158, 161, 716 P.2d 1387, 1389 (1986) (prior crime evidence is inadmissible if dubious or tenuous).

ports the jury findings on aggravating circumstances and justifies the jury's imposition of the death penalty in this case.[7]

Finally, Pertgen alleges prosecutorial misconduct, improper substitution of counsel, improper admission of confession evidence, and an abuse of the district court's discretion in reopening the case for more witness testimony. We have considered these contentions and conclude that each lacks merit. Accordingly, we affirm each of Pertgen's convictions and the corresponding sentences.

YOUNG, C. J., STEFFEN, SPRINGER and ROSE, JJ.,and RECANZONE, D. J.,[8] concur.

---

[7]The jury found as aggravating circumstances that the murder involved torture and depravity of mind. The jury found no mitigating circumstances.

[8]The Honorable Mario G. Recanzone, Judge of the Third Judicial District, was designated by the Governor to sit in the place of THE HONORABLE JOHN MOWBRAY, Justice. Nev. Const., art. 6, § 4.