MCDONALD, Judge (dissenting).
Is there any thing whereof it may be said, See, this is new? No, there is no new thing under the sun. Take this case for example. While the defendant presents this case as raising new issues regarding juror exposure to social media, this case merely presents the intersection of two long-resolved issues in the administration of the criminal jury trial. The first issue is whether the defendant's right to receive a fair trial was compromised by trying a high-profile case in a smaller community. See 3 William Blackstone, Commentaries , *349, *383 ("A jury coming from the neighborhood is in some respects a great advantage; but is often liable to strong objections: especially in small jurisdictions ... or where the question in dispute has an extensive local tendency; where a cry has been raised and the passions of the multitude been inflamed."). The second issue is whether the defendant's right to receive a fair trial was compromised by the injection of information into the trial process due to technological advances in the dissemination of information. See Irvin v. Dowd , 366 U.S. 717, 722 (1961) ("In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case."). The district court did not abuse its discretion or otherwise err in concluding the defendant did not establish an entitlement to new trial pursuant to the long-standing precedents governing the relevant issues. I respectfully dissent.
"The right to a trial by an impartial jury lies at the very heart of due process." Smith v. Phillips , 455 U.S. 209, 224 (1982) (Marshall, J. dissenting). To protect the defendant's right to trial by a fair and impartial jury, we have in place an elaborate pretrial process to select and empanel a fair and impartial jury. The prospective jurors must be drawn from a fair cross-section of the community. See Smith , 455 U.S. at 226 (Marshall J., dissenting). The defendant may seek to change the venue of his trial upon proof "that such degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from the county." Iowa R. Crim. P. 2.11(10)(b) ; see Smith , 455 U.S at 227 (Marshall J., dissenting). The parties may challenge the jury panel for any material departure from the statutory requirements for drawing or returning the jury. See Iowa R. Crim. P. 2.18(3). The parties are entitled to conduct voir dire of the prospective jurors to determine whether they are qualified and able to serve as jurors. See Iowa R. Crim. P. 2.18(6) ; Smith , 455 U.S. at 226 (Marshall, J., dissenting). The parties are entitled to challenge and remove jurors for cause. See Iowa R. Crim. P. 2.18(5). The parties are entitled to peremptory strikes of other jurors. See Iowa R. Crim. P. 2.18(9).
The record reflects the parties successfully availed themselves of these pretrial procedures to select a fair and impartial jury. The district court and the lawyers were keenly aware selecting a jury would be more difficult in this case than in the average case due to the visibility of the case in the community. At the beginning of jury selection, the district court stated, "This case, as I understand it, has gotten a fair amount of media attention. I'm from Estherville. I know this is a small community, people talk. So I just want to ask all of you at this point in time how many of you have heard about this case or have knowledge of this case, raise your right hand. That's a pretty good group. Please put them down." With this understanding, the district court and the lawyers conscientiously and diligently conducted voir dire of the prospective jurors over several days. A fair reading of the transcript shows the district court liberally granted the defendant's for-cause challenge to any prospective juror who expressed an inability or even reluctance to judge the case solely on the evidence presented at trial. A fair reading of the transcript also shows the jurors selected to serve, as a whole, were engaged in the process, candid in their responses to the lawyer's respective questions, and committed to rendering a verdict solely on the evidence and argument presented during trial.
Despite the pretrial procedures designed to select and empanel a fair and impartial jury, there are nonetheless circumstances that might later arise that might call into question whether the jury was in fact fair and impartial. One such circumstance is juror misconduct. "Juror misconduct ordinarily relates to actions of a juror, often contrary to the court's instructions or admonitions, which impair the integrity of the fact-finding process at trial. Typical acts of misconduct include communication with others outside the jury about the case, independently investigating the crime or accident scenes outside of judicial oversight, or engaging in independent research about questions of law or fact." State v. Webster , 865 N.W.2d 223, 232 (Iowa 2015). A related, perhaps overlapping, circumstance is jury intrusion. Jury intrusion occurs when extraneous information makes it way to the jury. See United States v. Olano , 507 U.S. 725, 739 (1993). "Jury intrusions may range from petty, de minimis incidents to outrageous conduct." United States v. Ramos , 71 F.3d 1150, 1153 (5th Cir. 1995). This case seems more an instance of jury intrusion rather than jury misconduct. See State v. Anderson , 448 N.W.2d 32, 34 (Iowa 1989).
Whether the claim is classified as juror misconduct or jury intrusion, well-established case law provides the defendant must prove the misconduct or intrusion "affect[ed] the jury's deliberations and thereby its verdict." Olano , 507 U.S. at 739 ; Webster , 865 N.W.2d at 223. The federal standard was summarized in Olano :
We generally have analyzed outside intrusions upon the jury for prejudicial impact. See, e.g., Parker v. Gladden , 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1967) (per curiam ) (bailiff's comments to jurors, such as "Oh that wicked fellow he is guilty," were prejudicial); Patton v. Yount , 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (pretrial publicity was not prejudicial); Holbrook v. Flynn , 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (presence of uniformed state troopers in courtroom was not prejudicial). A prime example is Remmer v. United States , 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), where an outsider had communicated with a juror during a criminal trial, appearing to offer a bribe, and the Federal Bureau of Investigation then had investigated the incident. We noted that "[t]he sending of an F.B.I. agent in the midst of a trial to investigate a juror as to his conduct is bound to impress the juror," and remanded for the District Court to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." Id. , at 229-230, 74 S.Ct., at 451.
....
There may be cases where an intrusion should be presumed prejudicial, see, e.g., Patton , supra , 467 U.S., at 1031-1035, 104 S.Ct., at 2888-2890 ; Turner v. Louisiana , 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), but a presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?
507 U.S. at 738-39. The Iowa standard is expressed differently but encompasses the same general notion: whether it appears "the misconduct was calculated to, and with a reasonable probability did, influence the verdict." Webster , 865 N.W.2d at 235-36 (quoting State v. Cullen , 357 N.W.2d 24, 27 (Iowa 1984) ).
When this court evaluates the district court's ruling on a motion for new trial due to juror misconduct or juror intrusion, two significant principles guide our review. First, there is legal significance attached to the jury's verdict. Once the jury has been sworn and rendered a verdict, we presume the jurors faithfully discharged their civic duty in accord with the district court's admonitions and instructions in the absence of clear evidence to the contrary. See Richardson v. Marsh , 481 U.S. 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process."); United States v. Padilla , 639 F.3d 892, 897 (9th Cir. 2011) (stating the jury "is entrusted with the obligation to apply the law and we in turn presume that juries follow instructions given to them throughout the course of the trial"); State v. Ary , No. 14-1112, 2015 WL 4935612, at *13 (Iowa Ct. App. Aug. 19, 2015) (McDonald, J., dissenting) ("I reject the premise that we presume the impaneled jurors were not impartial solely because of their exposure to one juror's stray remarks during voir dire. Instead, our caselaw provides we presume the impaneled jurors were serious-minded in taking their oath, they followed the court's instruction to render a verdict on the evidence, and they discharged their civic duty with the seriousness and earnestness the occasion demanded."), vacated by State v. Ary , 877 N.W.2d 686 (Iowa 2016). We honor the jury's service and attach weight to the finality of the jury's verdict. See Webster , 865 N.W.2d at 233 ("Further, here, a jury verdict has been rendered after a lengthy trial, and we have no desire to start again for trifles. As has been often said, the accused is not entitled to a perfect trial, but only a fair trial.").
Second, we defer to the judgment of the district court. District courts have an institutional advantage over appellate courts in ruling on motions for new trial arising out of claims of jury misconduct or jury intrusion. District courts regularly preside over trials and have better developed the skills necessary to evaluate the facts and circumstances of the particular case with respect to the conduct of the trial. The district court judge is a member of the local community and has his finger on the pulse of the community of which the jury is merely a microcosm. The district court also has the advantage of percipience. "We, as an appellate tribunal, are in a poor position to evaluate these competing considerations; we have only an insentient record before us. The trial court is in a far better position to judge the mood at trial and the predilections of the jury." United States v. Ramos , 71 F.3d 1150, 1153 (5th Cir. 1995) ; see also Olano , 507 U.S. at 739 ; Remmer v. United States , 347 U.S. 227, 228 (1954).
For these two reasons, among others, our review is for an abuse of discretion. See Webster , 865 N.W.2d at 231 ("We review a denial of a motion for a new trial based upon juror misconduct or juror bias for an abuse of discretion."); State v. Nitcher , 720 N.W.2d 547, 559 (Iowa 2006) ("The district court has broad discretion in ruling on a motion for new trial, and thus our review in such cases is for abuse of discretion."); Cullen , 357 N.W.2d at 27 (noting the district court has broad discretion when determining misconduct and its ruling will only be deemed an abuse of discretion if it is clearly unreasonable.).
In applying these long-standing rules and principles, I cannot conclude the district court abused its discretion or otherwise erred in denying the defendant's motion for new trial. The defendant failed to prove the alleged intrusions were calculated to influence the jury's verdict. "Calculated" means to plan or contrive to accomplish a purpose. See Calculated , Merriam Webster Online, https://www.merriam-webster.com/dictionary/calculated (last visited Apr. 10, 2018). "Calculated" connotes agency, viz., there is an actor who targeted the jury for the purpose of influencing the jury's verdict. In this case, there is no record of any actor seeking to influence the jury's verdict. Instead, the only evidence here is a Facebook post from an unknown person. During the hearing on the defendant's motion for new trial, no juror identified any actor allegedly attempting to influence the jury's verdict. The majority opinion does not identify the actor "calculating" to influence this jury's verdict.
The defendant also failed to establish a reasonable probability the alleged intrusions did, in fact, influence the jury's verdict. See Riessen v. Neville, 425 N.W.2d 665, 669 (Iowa Ct. App. 1998) ("A new trial is justified only when it appears the misconduct was calculated to, and with reasonable probability did, influence the verdict."). The difference between a possibility and a reasonable probability is significant. See id. The reasonable probability requirement is not easy to satisfy. Id. The intrusion is judged objectively "to determine whether the extraneous information would prejudice a typical juror. The standard has been expressed in terms of whether the material was of a type more likely than not to implant prejudice of an indelible nature upon the mind." State v. Henning , 545 N.W.2d 322, 325 (Iowa 1996) (citations omitted). "Prior decisions show that this prong is not easily satisfied." State v. Bergmeier , No. 00-1051, 2001 WL 1203377, at *3-4 (Iowa Ct. App. Oct. 12, 2001).
First, the content of the information is not of the type that would have influenced the jury's verdict. At issue in this case are vague allegations of possible disturbances in the community. In the record, there is a Facebook post from an unknown poster. The unknown poster stated "she was told" by unknown persons of unsubstantiated "rumors" of a "possible riot." Although the majority tries to characterize these statements as a direct threat against the jury to reach a particular verdict, there is no specific, readily identifiable, credible threat against the jury depending on its verdict. One juror stated the rumors were "ridiculous." Another juror testified the issue was raised and readily dismissed. When asked for detail about what was heard, one juror captured the zeitgeist. The juror stated the alleged disturbance was not "dependent on what specific decision was made by the jury, just that there were people on both sides of the issue about whatever the decision would be made." In other words, at worst, the Facebook post and other unsubstantiated rumors of possible disturbances in the community-started and spread by unknown persons-merely confirmed what the community, district court, lawyers, and jurors already knew. In a small community where, as the prosecutor said, "everybody knows everybody," the community was tense and divided, and any verdict would be subject to criticism from someone in the community. The unsubstantiated rumors discussed in the post-trial hearing were unlikely to influence any juror under the circumstances presented. A determination of juror misconduct must be based on objective facts, and not mere speculation, conjecture, or rumor. See State v. Piper , 663 N.W.2d 894, 910 (Iowa 2003).
By way of comparison, the conduct in this case is less directed, purposeful, and influential than in other cases where courts have concluded the defendant was not denied the right to a fair trial. See, e.g., Anderson , 448 N.W.2d at 34-35 (fleeting conversation between juror and reserve special deputy, who declared, "what's this not guilty shit," was not basis for new trial). Even in instances of direct threats to the jury, which are absent here, courts have been reluctant to grant a mistrial or new trial based on external conduct in the absence of actual influence. See United States v. Zelinka , 862 F.2d 92, 96 (6th Cir. 1988) (finding the trial court did not err in denying the defendant's motion for mistrial where the jurors all testified at a hearing that their impartiality was not affected by implied threats made by spectators linked to the defendant.); United States v. Pennell , 737 F.2d 521, 534 (6th Cir. 1984) (finding trial court did not abuse its discretion by not granting a mistrial where several jurors received threatening telephone calls of which the other jurors became aware); Wallace v. United States , 412 F.2d 1097, 1102 (D.C. Cir. 1969) (finding no error where newspaper article detailed threats to jurors but trial court found jurors could be impartial, that the responses of the jurors on voir dire indicated their commendable efforts to avoid reading comments on the trial, and that the special verdicts, including acquittal of two defendants on all counts and of two of the appellants on some counts, served to confirm the finding that the jury would be able to render an impartial verdict); Letsinger v. United States , 402 A.2d 411, 418 (D.C. 1979) (holding the trial court did not abuse its discretion in refusing to grant a mistrial where two jurors had overheard a threat by the victim's brother that he would get the jurors and kill them if they did not return a guilty verdict); Davis v. State , 770 N.E.2d 319, 326 (Ind. 2002) (concluding the defendant suffered no prejudice where the juror heard rumor the defendant's family made bomb threats against the courthouse); Pertgen v. State , 774 P.2d 429, 431 (Nev. 1989) (holding trial court did not err by denying the defendant's motion for mistrial where three jurors received anonymous telephone calls in which the caller offered them money if they voted for acquittal but threatened to kill them if they voted for conviction); Silver v. State , 737 P.2d 1221, 1224 (Okla. Crim. App. 1987) (finding the trial court did not err in refusing to grant a mistrial after the jury foreman reported that his family had been threatened); Com. v. Bomar , 104 A.3d 1179, 1212 (Pa. 2014) (holding defendant failed to establish prejudice where death threat was communicated to juror but the "threat was vague, its origins unknown," and was not attributed to the defendant); State v. Young , 866 S.W.2d 194, 196 (Tenn. Crim. App. 1992) (holding no prejudice where five jurors admitting to hearing of bomb threats against jury or having noticed unusual activity); Ryan v. State , 988 P.2d 46, 62 (Wyo. 1999) (finding comment from unidentified male that juror in murder prosecution heard as she left courthouse and later reported to other jurors, that "we know who they are and they better find him innocent," did not require mistrial).
Second, and related to this latter point, I cannot conclude the jurors in this case were so infirm that they ignored their civic duty and the district court's repeated instruction to decide the case on the evidence merely because they heard unsubstantiated rumors from unknown sources of possible disturbances not directed at anyone in particular. Here, from the beginning of voir dire and throughout the course of trial, the district court repeatedly guided and admonished the jury it had to be fair and impartial and decide the case based on the evidence and argument at trial. On the first day of voir dire, before the jury was selected, the judge told the jury, "Now that you know what this case name is, please do not talk to anybody about the case. Don't do any research about the case. Don't do anything to gain information about this case. Our goal here is to end up with a jury, number one, and be sure that jury is fair and impartial." The district court repeatedly warned the jurors that media reports do not contain accurate information. Review of the voir dire transcript shows the jurors committed to deciding the case based on the evidence and not extraneous information about the case. The jury was instructed the defendant was presumed innocent and not guilty, the State had the burden to prove the defendant guilty beyond a reasonable doubt, and the determination of guilt or innocence must be based on "the evidence and the law" in the instructions. Instruction 13 provided the jury "shall base [its] verdict only upon the evidence and these instructions." Instruction 13 further provided "[a]nything you saw or heard about this case outside the courtroom" was "not evidence." Instruction 15 provided the jury was to "[d]ecide the facts from the evidence." Instruction 37 provided each juror must decide the case for his or her self but only "after an impartial consideration of the evidence with the other jurors." Finally, instruction 38 provided:
You may not communicate about this case before reaching your verdict. This includes cell phones, and electronic media such as text messages, Facebook, MySpace, Linkedln, YouTube, Twitter, email, etc. Do not do any research or make any investigation about this case on your own. Do not visit or view any place discussed in this case, and do not use Internet maps or Google Earth or any other program or device to search for or to view any place discussed in the testimony. Also, do not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge. This includes using the Internet to research events or people referenced in the trial.
This case will be tried on evidence presented in the courtroom. If you conduct independent research, you will be relying on matters not presented in court. The parties have a right to have this case decided on the evidence they know about and that has been introduced here in court. If you do some research or investigation or experiment that we do not know about, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, including the oath to tell the truth and by cross-examination. All of the parties are entitled to a fair trial, rendered by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide a case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this state and you will have done an injustice.
The facts and circumstances of this case are not the extreme case in which we can infer the jury disregarded the district court's instructions to decide the case on the evidence presented. See State v. Bolds , 55 N.W.2d 534, 535-36 (Iowa 1952) ("Jurors have sworn to try the case in accordance with law and the instructions of the court, and [it] is only in extreme cases that we can presume they have disregarded their oaths and ignored the strong direction of the court."); Bergmeier , 2001 WL 1203377, at *4 ("The court also instructed the jury when the case was submitted that its verdict was to be based only upon the evidence and the instructions, and that the evidence did not include anything seen or heard about the case outside the courtroom. We may presume the jurors followed the court's admonition.").
Third, and most important, we need not speculate on whether the alleged intrusions did, with reasonably probability, influence the jury's verdict. In this case, approximately three months after the jury returned its verdict, the district court held a hearing on the defendant's motion for new trial. Given the length of time between the trial and the post-trial hearing, there was some unsurprising inconsistency in the juror's respective testimony regarding who heard what and when. However, each of the jurors was specifically questioned regarding whether he or she had been exposed to or heard information regarding a potential riot prior to the jury reaching its verdict. Each juror answered the question in the negative. While the majority is correct that the verdict is not final until announced in open court, that legal proposition does not change the factual finding that these particular jurors testified they were unaware of the information until after the jury had already decided the case. While there may be some remote possibility a juror could have changed his or her verdict between the time of decision and the time the verdict was announced in open court, this remote possibility does not rise to the level of reasonably probability our case law requires. See Riessen, 425 N.W.2d at 669 (stating the reasonable probability requirement is not easy to satisfy).
If the facts and circumstances of this case-unsubstantiated rumors of possible disturbances directed at no one in particular posted on Facebook-were enough to establish an entitlement to new trial, no murder case could be tried in any community, let alone a smaller community. This is particularly true in an era where information is available on the Internet, on television, on radio, and in the newspaper; where people rapidly exchange information via email, text message, direct message, and public messaging platforms; where smart phones push local news and information to the user; where members of the community are more connected via social media platforms; and where the social media platforms also push information to the user. For example, in Webster , I noted in dissent the defendant failed to prove the denial of a right to fair trial due, in part, to the extensive interconnectedness of persons in smaller communities:
The nature of the relationship between the juror and the victim's family, in and of itself, is not grounds for finding bias. The relationship is not of the type from which bias is necessarily inferred and that would support a challenge for cause. See Iowa R.Crim. P. 2.18(5). In fact, the relationship was attenuated-the juror's daughter was high school friends with the victim's half-sister or stepsister. The victim's mother was included in the juror's Facebook social network, but that fact alone does not indicate a meaningful relationship. See Sluss v. Commonwealth , 381 S.W. 215, 222 (Ky.2012) (noting on Facebook "a person can become 'friends' with people to whom the person has no actual connection"); see also id. n.8 (noting the performer Lady Gaga had millions of Facebook "friends"). Also, the inference of bias that could be drawn from the relationship between the juror and the victim's family, if any, is mitigated by the fact the juror also had a relationship to the defendant's family-the juror's parents were good friends of the defendant's wife's family. The juror was also Facebook friends with one of Webster's wife's relatives.
State v. Webster, No. 13-1095, 2014 WL 5861967, at *15 (Iowa Ct. App. Nov. 13, 2014) (McDonald, J., dissenting), vacated by State v. Webster , 865 N.W.2d 223.
The defendant's right to a fair trial is a foundational right, but he has not established the district court abused its discretion or otherwise erred in concluding the defendant failed to prove his right to a fair trial was compromised in this case. The fact that an unsubstantiated rumor was spread on a social media platform does not change the analysis. The defendant's claim is old wine in a new bottle. Our courts have long-settled rules and principles governing jury misconduct and intrusion of any type. Long ago, the Iowa Supreme Court stated:
In fact, it must be apparent that to follow the narrow rule of the Caine case would be to vitiate verdicts in almost all cases in which the jury is not strictly segregated. The citizens of Iowa are highly literate; they are interested in world affairs, and in the news of their state and of their communities. They follow events closely; and the fact of their selection as members of a jury does not automatically eliminate their desire to keep up with the times. When they are permitted to disperse at adjournments of the trial, it is inconceivable that they will not read newspapers and listen to telecasts and broadcasts. No matter how conscientiously they may try to avoid reading or listening to accounts of the trial in progress, and especially when the case is one which has aroused considerable interest, they will be faced with headlines or will advertently hear some comment from a newscaster concerning the matter before them.
But each juror has taken an oath which requires him to try the case solely upon the evidence submitted, guided by the court's instructions. We think a rule which assumes as a matter of law that the mere reading or listening to newspaper or television or radio broadcasts of accounts of the trial is prejudicial misconduct of the jury goes too far, and we decline to follow it. Insofar as State v. Caine and State v. Peirce, announce such a rule they are overruled. We hold the true rule to be that reading or listening to reports of or comments on a trial in progress, by the jurors, or some of them, is not necessarily prejudicial error. Something must appear which leads to the conclusion that the jury was unfairly influenced by these extraneous matters; and in determining this, the trial court has a considerable, although not always final, discretion.
State v. McLaughlin , 94 N.W.2d 303, 309-10 (Iowa 1959). In the same vein, the United States Supreme Court has stated:
[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.
Smith , 455 U.S. at 217. I respectfully dissent.